MARILYN SMITH t/a Smith Furniture Company et al.
*v.* ATTORNEY GENERAL OF MARYLAND

[No. 1284, September Term, 1979.]

*Decided June 17, 1980.*

The cause was argued before GILBERT, C. J., and MOORE and COUCH, JJ.

*A. Dwight Pettit,* with whom was *Jerome Shuman* on the brief, for appellants.

*Jonathan Acton, II, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *William Leibovici, Assistant Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This appeal would never have arisen in the days of yore, when *caveat emptor* ruled supreme. Those days, it seems, are gone forever, and if not, are at least passe at this time. *Caveat emptor* has been replaced by *caveat venditor.* The instant case is concerned with the Maryland General Assembly's effort to afford greater protection to the consumer in the form of Consumer Protection Laws (CPL), Maryland Commercial Law Code Ann. (1975) §§ 13-301 — 501.

The matter reaches us because the appellants, Marilyn Smith, Jack Smith, Smith Furniture Co., and Smith Furniture Discount, Inc.[1] were assessed civil penalties of $300 in each of 100 alleged violations of the CPL, a total of $30,000. In addition to the civil penalty, the court appointed a receiver to take charge of and operate the furniture business of the appellants.

This litigation was commenced when the Attorney General of Maryland filed a suit in the Circuit Court for Washington County against the appellants for alleged

---

1. The latter company, Smith Furniture Discount, Inc. was incorporated on June 5, 1978, subsequent to the filing of the instant suit. On petition by the appellees, the incorporated successor to Smith Furniture Co., was added as a party defendant.

violations of the consumer protection laws. At the conclusion of the trial, the circuit court, in addition to the civil penalties to which we have made reference, 1) awarded costs against the appellants; 2) ordered that the appellants jointly and severally pay the sum of $2,075.06 to six named former customers of the appellants; 3) directed the Washington County Sheriff to take custody "immediately" of the property and assets of Smith Furniture Discount, Inc.; and 4) appointed co-receivers of the property and assets of Smith Furniture Co.[2]

Vastly upset by what they view as defects in both the trial procedure and the relief granted, the appellants raise an octad of issues for our review, namely:

"I.

Whether one who in good faith makes a promise to perform in a certain manner and is later unable to perform because of intervening conditions is guilty of an unfair or deceptive trade practice?

II.

Whether under the Maryland Consumer Protection Act a Court may find a defendant guilty of violations soley [sic] on the basis of the number of complaints made against and where the complaints are unsupported by the testimony of the complaining parties as witnesses at the trial or other credible evidence?

III.

May Jack Smith be found guilty of a violation of the Consumer Protection Act when there is no testimony, evidence, or allegation that he was a participant in any of the alleged conduct, or that he had knowledge of the existence of the alleged conduct?

---

2. We note in passing that no injunctive relief was granted.

## IV.

Whether it is a denial of due process of law for the State to fail to follow the Mandatory Conciliatory provision set forth in its own Code?

## V.

Whether the general allegations in the 'Seven Day Notice of Injunctive Relief' filed by the State were so lacking in specificity that the Appellants were not accorded a fair opportunity to defend and were thereby deprived of due process of law?

## VI.

Whether the Appellants were deprived of their Constitutional right to a jury trial?

## VII.

Whether the Appellants were deprived of their property without due process of law when the Court ordered the Sheriff immediately after the trial to take possession and control of all of the property and assets of Smith Furniture Discount, Inc., Smith Furniture Company and any and all assets related to the conduct of that business and to maintain control over these assets until such time as a receiver was appointed?

## VIII.

Whether the charges against the Appellants in this case were so totally devoid of evidentiary support as to render the judgment against them unconstitutional under the Due Process Clause of the Fourteenth Amendment?"

We have set out below the skeletal facts of the case in order for the reader to have a better understanding of why the appellants appear in this true-to-life drama, cast in two roles, depending upon through whose eyes one sees the play. The Attorney General depicted appellants as conniving

merchants concerned solely with lining their own pockets at the expense of their mistreated and abused customers. The appellants, however, see themselves as harassed small business people who have done their utmost to satisfy and service their customers, but whose efforts have been frustrated by matters beyond their control.

Marilyn and Jack Smith own and operate the Smith Furniture Co., located exclusively in Hagerstown, Maryland, and which, as its name suggests, is a retail furniture store. The business is characterized in the record as "a typical mom and pop operation." The Smiths' son, Morris, owns a truck. He is employed by the company to make pickups of furniture from a variety of manufacturers and to deliver furniture to customers. In both instances he uses his own truck. Frequently, another employee of the furniture store helps him. Mr. Smith, because of declining health, has become relatively inactive in the business with the result that Mrs. Smith presently operates it almost single-handedly, save for the signing of checks, which power allegedly still remains exclusively in her husband.

During 1975 and 1976, but prior to November 10, 1976, the Consumer Protection Division (Division), at its Hagerstown office, received approximately twenty written complaints from customers of the Smith Furniture Co. The complaints were with regard to the business practices of the Smiths which led to customer dissatisfaction with the way the furniture company was servicing orders for furniture.

According to Mr. Larry E. Munson, a consumer protection investigator, who testified as an expert at trial, the complaints prior to November 10, 1976, fell into three categories: eleven concerned missed and rescheduled delivery dates; three were about the receipt of wrong furniture; and six resulted from the failure to receive any furniture at all.

Because the Division thought it had reasonable grounds to believe the practices about which complaints were made may have been unfair and deceptive and thus prohibited under Commercial Law § 13-301, it attempted to remedy the

situation by way of conciliation.[3] Smith Furniture and the Division, on November 10, 1976, entered into a written "Assurance of Discontinuance" pursuant to section 13-402 (a).[4]

The agreement was signed by Jack I. Smith in his individual capacity and T/A Smith Furniture Co. In the agreement, Smith covenanted, without admitting the truth of the Attorney General's allegations, that the company would henceforth deliver furniture on agreed dates and refrain from delivering different or damaged goods. The Attorney General, in return, contracted to withhold further action so long as "Jack I. Smith, T/A Smith Furniture Company" did not breach the Assurance.

Subsequent to entering into the Assurance, the Division continued to receive complaints in increasing numbers against Smith Furniture. The number of complaints filed in each of the three categories to which Munson testified, were 65, 13, and 18, respectively. It was stipulated between counsel that since 1975, the Division had received a total of at least 100 complaints against the appellants.

Inasmuch as the "Assurance of Discontinuance" had no deterrent effect on the Smith Furniture Company, the Attorney General took the next step allowed by the Consumer Protection Act. He instituted an action against

---

3. Comm. Law § 13-402 provides:

"(a) *Division to seek conciliation; exception.* — (1) If the Division determines that there are reasonable grounds to believe that a violation has occurred, it shall, except as provided in paragraph (2), attempt to conciliate the matter by methods of conference and persuasion with all interested parties and any representatives which they may choose to assist them.

(2) If the Division determines that violations are occurring which are causing immediate, substantial and irreparable injury, the Attorney General may seek an ex parte or interlocutory injunction pursuant to § 13-406, without first attempting conciliation.

(3) The terms of any conciliation agreed to by the parties may be made part of a written assurance of discontinuance or settlement agreement to be signed by the Division and each party. The assurance or agreement is for conciliation purposes only and does not constitute an admission by any party that the law has been violated." (1979 Cum. Supp.)

4. *See* n. 3, *supra.*

the appellants under section 13-406 (a) of the Act so as to obtain an injunction and other appropriate relief. Before doing so, however, and in compliance with section 13-406 (b) of the Act, the Attorney General served a notice of the general relief sought seven days in advance of the filing of the Bill. An offer of conciliation was served with the notice which read in pertinent part:

> "The . . . [Division] hereby offers . . . [Jack Smith, T/A Smith Furniture Company and Jack Smith, individually] an opportunity to conciliate the alleged violations of the Maryland Consumer Protection Act. If you intend to conciliate these matters please contact . . . [the Division] in writing no later than seven (7) days from the date this Notice and Offer of Conciliation are received."

The Attorney General apparently received no reply to his offer.

A Bill of Complaint filed by the Attorney General alleged that the appellants had committed unfair or deceptive trade practices as defined in section 13-301 (1) and (9) iii and a violation of section 13-303 (1) and (2). The Bill in part reads as follows: [5]

> ". . . [The appellants have] engaged in the following unfair or deceptive trade practices as defined in Section 13-301 of the Maryland Consumer Protection Act:
>
>> A. false, misleading, oral and written statements, other representation, of her ability to procure and deliver furniture and other consumer goods to consumers, which have the capacity, tendency and effect of

---

5. The joint record extract submitted is woefully inadequate. Had not the Attorney General in his brief supplied most of the missing documents, pleadings, and the like, we would have dismissed the appeal for failure to comply with Md. Rule 1028. Oddly, neither side bothered to put in the extract the Bill of Complaint, the very thing that is under attack. The answer to the Bill was printed by the appellee.

deceiving and misleading consumers, under . . . (1);

B. deception, fraud, false premise, misrepresentation and knowing concealment, suppression and omission in the subsequent performance of an agreement of sale concerning her failure to procure and deliver furniture as promised, with the intent that consumers rely on the same, under Paragraph (iii) of . . . (9), and

C. deception, fraud, false premise, misrepresentation and knowing concealment, suppression and omission in the subsequent performance of an agreement of sale by the willful delivery of unordered merchandise different from and instead of that merchandise purchased by consumers, with the intent that consumers rely on the same, under Paragraph 8 (iii) of . . . (9) [and]

. . . .

6. The unfair or deceptive trade practices described above are in violation of Section 13-303, . . . (1) and (2) of the Maryland Consumer Protection Act.

7. The Attorney General further alleges that the above unfair or deceptive trade practices by the Respondent, in her capacity as agent for Smith Furniture Company and Jack I. Smith, owner of said business, are in violation of the provisions of an Assurance of Discontinuance, a copy of which is attached hereto and made a part hereof as Exhibit A, agreed to and entered into by Jack I. Smith with the Attorney General on November 10, 1976, pursuant to Section 13-402 (b) of the Maryland Consumer Protection Act.

8. Violation of the Assurance of Discontinuance as described, is a violation of Section 13-303, . . . (1)

and (2), of the Maryland Consumer Protection Act
as provided by Sections 13-402 (c) and 13-301 . . .
(10)." [6]

A Special Examiner was appointed, pursuant to Maryland
Rule 580 a, for the purpose of taking testimony. Twenty
complainants appeared before the examiner. Mrs. Smith was
present with counsel at each of the hearings held by the
examiner. Transcripts of the testimony, exhibits,
documents, and his own summary report were filed by the
examiner with the circuit court. Ten days later, no sufficient
cause to the contrary having been shown, the evidence was
adopted by the court. Md. Rule 580 p.

The Special Examiner's summary of the testimony, in
pertinent part, was as follows:

> "The witnesses heard by the Special Examiner
> were customers of Smith Furniture Co., a long
> established retail furniture business located . . . in
> Hagerstown. All of the witnesses had direct
> dealings with Mrs. Marilyn Smith. . . . Mr. Jack I.
> Smith was not present due to illness.
>
> . . .
>
> "The bulk of the testimony by far related to delays
> in delivery or non-delivery of merchandise. Each
> witness who testified did not receive his
> merchandise when promised by Mrs. Smith. Nearly
> every witness testified that Mrs. Smith, in
> explaining delays in delivery, told them that her
> truck had broken down. . . . [T]he testimony was
> very similar in most of the cases.
>
> The customer would see an advertisement of
> Smith Furniture Co. and would go to the store to see
> the furniture. The customer would then buy some
> furniture and Mrs. Smith would set up a delivery

---

6. Reference to section 13-301 (10) is in error. 1976 Md. Laws, ch. 507,
effective July 1, 1976, added new paragraphs (10) and (11) and renumbered
old (10) to be (12).

date. In most cases, no delivery date would be set up until the furniture had been paid for in full. When the time came for delivery, none would be made. Either the customer would then call Mrs. Smith or much more infrequently, Mrs. Smith would call the customer, to arrange a new date for delivery. The pattern of non-delivery and arrangement of a new date then repeats, often as many as eight to ten times or more until the customer would demand a refund. ... [S]ome of the customers went so far as to file District Court cases against Smith Furniture. In all cases, the customers filed complaints with the ... [Division].

. . .

As to the credibility of the witnesses, there are a few observations of which the Court ... should be made aware. None of the witnesses impressed the Examiner as being particuarly adept or shrewd in business dealings. ... Your examiner found the witnesses, on the whole, to be honest, truthful and believeable."

A trial was had on August 8 to 10, 1979, in the circuit court. Eight persons, including Mrs. Smith, gave testimony. The witnesses included two former employees and a former furniture supplier of Smith Furniture's. From the totality of the evidence, that is, the Special Examiner's hearings and the trial testimony, the chancellor found that "in the period of time covered there have occurred at least 100 separate and distinct violations." Consequently, the trial judge entered an order appointing a receiver for Smith Furniture Co. (section 13-406 (c) (3)), assessed civil penalties in the amount of $30,000 (section 13-410 (a)), payment of costs by the Smiths (section 13-409), and restitution of $2,075.06 (section 13-406 (c) (2)).

## I.

### — GOOD FAITH PROMISES —

The appellants argue that the evidence was insufficient to support a finding of an unfair or deceptive practice as

defined by section 13-301 (9). That section establishes a prohibited practice as "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same. . . ."

There was evidence that the appellants took orders for furniture that was supposedly in the "warehouse" and promised prompt delivery. There was also evidence that no warehouse existed, and while some of the furniture was specially ordered, much of it was not. Delivery dates were not met. The appellants seek to excuse themselves on the ground that weather and mechanical failure (a broken-down truck) precluded timely delivery. Perhaps, had the situation been one of an isolated incident the trier of fact may have believed appellants. As it is, however, the trier of fact simply did not believe the representations made to him by Mrs. Smith. The repeated excuses of the delivery truck's breaking down, or difficulty at the furniture factory reached the same point as the youth in the fable about "crying wolf" too often. Moreover, the chancellor was entitled to infer from the evidence that at the time the furniture was sold, the appellants knew or should have known that they could not meet the promised delivery date. Notwithstanding that knowledge, the appellants, nevertheless, made the promise of delivery in order to effect the sale and with it, obtain the profit. We think the pattern of behavior of the appellants was such as to show deceit, fraud, and misrepresentation. There was no error on the part of the chancellor in so finding.

II.

— *100 VIOLATIONS* —

The appellants contend that there was insufficient evidence for the trial judge to find "at least one hundred separate and distinct violations" of the Consumer Protection Act. Our perusal of the records leads us to agree that with respect to 80 of the violations, the evidence was legally

insufficient. There was, however, ample evidence to support the circuit court's finding as to the remaining 20 violations.

There were, indeed, 100 complaints filed with the Division. Testimony, as we have seen, was taken before a master as to 20 of the 100. The only thing offered in support of the other 80 were, in most cases, the unsworn complaints themselves. The complaints were offered into evidence for the purpose of showing they were made. The fact that these complaints were made and received by the Division was stipulated to by the appellants in a pretrial order of July 20, 1979.

The trial testimony consisted in part of the disbelieved affirmations of Mrs. Smith. The trial judge stated:

> "At the beginning . . . of Mrs. Smith's testimony, this Court was of the opinion that Mrs. Smith may very well have been a victim of circumstances and/or a victim of numerous unfortunate events. But as the testimony unfolded, it became clear to this Court that Mrs. Smith is a very skillful and a very shrewd businesswoman, and the Court recognizes that being a skillful and shrewd businesswoman is not in of itself a violation of the statute under which this proceeding is brought. But I further have become persuaded that Mrs. Smith is also a very deceptive person and she is a devious person who would say or do anything and represent anything to anyone to further her own ends."

The 80 violations were based on nothing more than the unverified complaints filed with the Division. Those complaints, of course, were not subject to examination or cross-examination. We are at a loss to understand why the Division chose not to subpoena the 80 complainants to testify before either the Special Examiner or the court. Absent that evidence, we must conclude that the record does not support the chancellor's finding of "at least 100 violations." The conclusion by the trial judge is based on

little more than conjecture and surmise. That sworn testimony supported twenty complaints does not mean that the other 80 unverified complaints are *ipso facto* true. Furthermore, the acceptance of those unsworn, unproven complaints as true, without any opportunity on the part of the appellants to inquire by way of cross-examination, seems to us to transgress due process and fundamental fairness.

If we were sure that each of the 100 offenses stood on its own, we would vacate 80 of them leaving a penalty of $6,000, but because we are unable to say that with the number of violations being substantially reduced that the chancellor will still impose a fine of $300 on each of the remaining 20 cases, we decline to so modify the penalty. That is the trial judge's decision to make, and we are not to be understood as attempting to make it for him or suggesting that he impose a lesser penalty in each case.

## III.

### —LIABILITY OF JACK SMITH —

The appellants aver that the evidence was insufficient to support a finding that Jack Smith violated the Consumer Protection Act. They reason that Jack Smith never actively participated in the business; he had no relationship with Smith Furniture Discount, Inc., the successor to the Smith Furniture Co.; and his signing of the "Assurance of Discontinuance" is no basis for a finding of a violation of the Act on his part. The appellant's three-pronged argument apparently stems from the finding of the trial court that, save for the signing of checks, Marilyn Smith operated the business and made, *inter alia,* the fraudulent representations. We observe, as did the chancellor, that Jack Smith signed the "Assurance of Discontinuance" both individually and trading as Smith Furniture Co. The breach of that agreement was the catalyst for the instant proceedings.

Section 13-402 (c) (1) provides that a breach of "a written assurance of discontinuance" is, itself, a violation of the

Consumer Protection Act. There is no question but that the Assurance was breached. Indeed, from the record one could justifiably infer that the agreement was breached more than it was honored. The breach of the agreement signed by Mr. Smith on any one occasion violated section 13-402 (c) (1). When Jack Smith subscribed his name to the Assurance Agreement, he made himself liable for its breach. He will not now be heard to disclaim responsibility for the very thing for which he, by signing the Assurance of Discontinuance, assumed responsibility.

Moreover, the trial judge found as a fact that "Jack I. Smith, Marilyn Smith, Smith Furniture Company, and Smith Furniture Discount, Inc. are all one and the same." We think the record supports that conclusion. Hence, a violation by one of the four was a violation by each of the remaining three.

## IV.

### —MANDATORY CONCILIATION —

Appellants next argue that section 13-402 of the Consumer Protection Act requires that the Attorney General must seek conciliation as a prerequisite to seeking other remedies against the alleged violator.

Such an argument obviously does not take cognizance of the statute that was in effect when the assurance was signed or when the suit was brought. The General Assembly, by Laws 1976, ch. 255, restructured section 13-402. *See* n. 2, *supra*. Paragraph (2) of subsection (a) of section 13-402 provides:

> "If the Division determines that violations are occurring which are causing immediate, substantial and irreparable injury, the Attorney General may seek an *ex parte* or interlocutory injunction pursuant to § 13-406, *without first attempting conciliation.*" (Emphasis supplied.)

Patently, the statute confers upon the Attorney General the right to proceed in the manner in which he did. The argument to the contrary is meritless.

## V.

### — *SEVEN (7) DAY NOTICE OF INJUNCTIVE RELIEF* —

Proceeding with their multi-faceted assault on the judgment of the circuit court, the appellants asseverate that the State failed to comply with section 13-406 (b) of the Consumer Protection Act. That section provides that "[t]he Attorney General shall serve notice of the general *relief* sought on the alleged violator at least seven days *before the action for an injunction is filed."* (Emphasis supplied.)

The Attorney General sent to the appellants a paper writing entitled: *"SEVEN (7) DAY NOTICE OF INJUNCTIVE RELIEF TO BE SOUGHT."*

In the "notice" it was stated that:

"NOTICE IS HEREBY GIVEN, in accordance with the provisions of the *Annotated Code of Maryland,* Commercial Law Article, Title 13, Subtitle 4, Section 13-406 (b) (1975 Volume, 1977 Cumulative Supplement), said Title hereinafter cited as the Maryland Consumer Protection Act pursuant to Section 13-501 of Subtitle 5, that seven (7) days following the date of service of this Notice, the Attorney General for the State of Maryland intends to seek an Injunction and other relief in the Circuit Court of Washington County against the named Respondent . . . to prevent further violations and to seek restitution, penalties and other relief for past violations of the Maryland Consumer Protection Act by Respondent, her agents, servants and employees.

The Attorney General will allege specifically, but not by way of limitation, that the Responent *[sic],* her agents, servants and employees in the course and conduct of business activities in the State of Maryland have engaged and continue to engage in unfair or deceptive trade practices in violation of Subsections (1) and (9) of Section 13-301 and

Subsections (1) and (2) of Section 13-303 of the Maryland Consumer Protection Act and are subject to the enforcement and penalty provisions of Sections 13-406, 13-409, and 13-410 of the Maryland Consumer Protection Act.

WHEREFORE, the Attorney General for the State of Maryland will seek the following relief by Order of Court:

(a) That the Court, pursuant to Section 13-406 (c) Subsection (1), of the Maryland Consumer Protection Act, permanently enjoin the Respondent, her agents, servants and employees from engaging in unfair or deceptive trade practices;

(b) That the Court, pursuant to Section 13-406 (c), Subsection (2), order the Respondent to restore to all persons any money acquired from them by means of any prohibited practices;

(c) That the Court, pursuant to Section 13-406 (c), Subsection (3), appoint a receiver in the event that the Court determines that there has been a willful violation of the Maryland Consumer Protection Act;

(d) That the Court, pursuant to Section 13-409 of the Maryland Consumer Protection Act, award to the Attorney General from the Respondent the costs of this action for the use of the State;

(e) That the Court, pursuant to Sections 13-410 (a) and (c) of the Maryland Consumer Protection Act, impose a civil penalty in the amount of Three Hundred Dollars ($300.00) for each violation of the Maryland Consumer Protection Act found to have been committed by the Respondent, her agents, servants and employees. . . ." (Emphasis in original.)

The appellants argue that "[a] complaint must state facts sufficient to constitute a cause of action." We certainly have

no quarrel with such a statement, but it is inapplicable here. The "notice" is not the "complaint," nor is it likened to an information, warrant, or indictment. It is what it says it is — a notice of "general" relief to be sought by way of injunction. The notice is not required to contain allegations and facts with specificity. The notice in the instant case satisfied the statute.

## VI.

### — RIGHT TO TRIAL BY JURY —

Appellants contend that because civil penalties are assessable under the Consumer Protection Act, the federal constitution guarantees to them the right to a trial by jury. As interesting as the question may be, we do not consider it inasmuch as it is not properly before us. No request for a jury trial was ever made at the trial level. It may not be raised for the first time on appeal. Md. Rule 1085; *Zellinger v. CRC Development Corp.,* 281 Md. 614, 380 A.2d 1064 (1977) (construing Md. Rule 885 which is the same as Rule 1085 except the former applies to the Court of Appeals, the latter to this Court); *Rose v. State,* 37 Md. App. 388, 377 A.2d 588 (1977); *C.S. Bowen Co., Inc. v. Maryland National Bank,* 36 Md. App. 26, 373 A.2d 30 (1977).

## VII.

### —SHERIFF'S INTERIM POSSESSION OF PROPERTY —

Appellants argue that their due process rights were violated when the trial court directed the Sheriff of Washington County to take immediate possession and control of all the assets of Smith Furniture Co., pending appointment of a receiver.

Section 13-406 (c) 3 authorizes the appointment of receivers in those cases of wilfull violation of the Consumer Protection Act. The chancellor found the requisite intent

necessary to utilize the remedy of a receivership for the appellant's property. The judge stated:

"Now, with regard to the request for the appointment of a receiver . . . or in the alternative an injunction this Court is satisfied that the conduct of this business in the manner which has been testified to in this Court has been willful and deliberate.

. . .

Therefore, . . . it is Ordered that the Sheriff's Department of Washington County take immediate custody of all the property and assets of . . . Smith Furniture Company, . . . and to keep that facility safe and to discharge it only to a duly appointed receiver who this Court will name at the earliest possible date. . . ."

According to the docket entries, the order directing the Sheriff to take custody of appellants' property and assets is dated August 10, 1979. Included in that very same order is the appointment of Richard W. Lauricella and Gayle L. Crawford, Jr., as co-receivers for the appellants' business. Even if the judge was in error in directing the Sheriff to take custody of appellants' property, the error is absolutely harmless because the co-receivers were appointed in the same order. Inferentially, they qualified promptly. The court's order to the sheriff did no more than assure that the property, books, and records of the business were available to the co-receivers.

## VIII.

### —DUE PROCESS —

Appellants' final contention is that they were deprived of due process of law when they were found guilty of violations of the Consumer Protection Act on a record devoid of evidentiary support. The contention is groundless. We have

96

already noted above that the evidence adduced by the appellee is sufficient to sustain the findings of the trial court.

> *Judgment affirmed in part and reversed in part.*
> *Case remanded for further proceedings consistent herewith.*
> *Costs to be divided between the parties.*