533 A.2d 282

**STATE of Maryland**

v.

**Louis ANDREWS, et al.**

**No. 271, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 12, 1987.

Lucy A. Weisz, Asst. Atty. Gen. (Steven J. Cole and Mark J. Davis, Asst. Attys. Gen., on the brief), Baltimore, for appellant.

No brief or appearance by appellees' counsel.

Argued before BISHOP, BLOOM, and WENNER, JJ.

BISHOP, Judge.

The State of Maryland (State) appeals from the judgment and rulings of the Circuit Court for Baltimore County. The court, having found that Grecian Spa Resorts, Inc. and Louis Andrews (Andrews), its owner, (jointly referred to as Grecian Spa) had engaged in deceptive trade practices,

entered a limited restitution award in favor of some of Grecian Spa's customers. On appeal, the State asks three questions:

I. Whether consumer testimony at trial is a prerequisite to restitution in a State consumer protection action involving numerous similarly situated victims?

II. Whether the court erred in denying relief to persons whose losses were documented in the spa's books and records?

III. Whether the court erred when it denied restitution to those consumers who bought their memberships from other members pursuant to spa-sanctioned transfer arrangements?

## FACTS

From 1974 until it closed in December, 1979, Grecian Spa, at its York Road location, sold figure salon, weight loss, and exercise services on a subscription basis. Although Grecian Spa apparently was a going concern, Andrews closed the facility in December of 1979 because of the difficulties that existed between himself and his ex-wife who, by virtue of the parties' divorce decree, had a fifty percent ownership interest. After the facility closed, over 150 consumers filed complaints with the Consumer Protection Division of the Attorney General's Office.

In April of 1985, the State filed suit against Grecian Spa under the Maryland Consumer Protection Act (the Act), §§ 13–101 through 13–501, Md.Com.Law Code Ann. The State alleged that Grecian Spa had committed deceptive trade practices as they are defined in Sections 13–301(1) and 13–301(3) of the Act and sought restitution and injunctive relief pursuant to Section 13–406. Specifically, the Complaint charged that Grecian Spa had violated Section 13–303 by:

(1) representing to consumers who purchased spa memberships that the spa would be available for the duration of their membership, and then voluntarily closing the

facility without refunding the unearned advance payments; and

(2) accepting advance payments for spa memberships at a time when it had reason to believe that the spa might not be in a position to fulfill the membership without disclosing that material fact to the purchasers of memberships.

The State requested a bifurcated trial, so that liability could be determined before consideration of individual claims for restitution. The request was denied, and the parties proceeded to trial on November 5, 1986. Forty-one consumers testified at trial. The core of their testimony was that each of them had purchased a long-term membership contract from Grecian Spa, that they were unable to use the facility after it closed in December of 1979, and that they never received a refund for the unexpired terms of their contracts.

On November 14, 1986, the court, in an oral opinion, concluded that the assets of Grecian Spa had been depleted in an unscrupulous manner by Andrews and that the depletion amounted to a deceptive trade practice in violation of the Maryland Consumer Protection Act. The court awarded a restitution judgment in favor of the State in the amount of $10,821.76 plus costs and directed that the money be disbursed on a pro rata basis to thirty-four of the witnesses who testified. The individual restitution amounts were based on a ratio between the amount paid for the membership and the length of the unexpired term. Recovery was denied to seven of the alleged consumers on the basis that the State had failed to meet its burden of proof regarding their right to recovery. No relief was provided for consumers who did not appear at trial, although contract and payment information for a number of those consumers was before the court by virtue of the introduction of Grecian Spa's 1979 receipt journals.[1] The court was also of

---

1. Grecian Spa admitted the authenticity of its books and records by failing to respond to the State's Request for Admissions of Genuiness of Documents. Md. Rule 2–424.

the opinion that any further claims by the customers were barred by laches.

## I.

Although almost seven years passed between December, 1979, when Grecian Spa closed its doors, and the date of trial, forty-one former members of Grecian Spa appeared and testified. Nonetheless, approximately 150 consumers who had filed complaints with the Consumer Protection Division could not appear, for various valid personal reasons. The State noted this fact at the close of its case in chief, and requested that those individuals not be barred from appropriate relief. The court, however, was of the opinion that live testimony was essential before a determination could be made regarding an individual's right to recovery and, in its final decision, barred relief to those individuals who failed to testify.[2]

■ The State argues that the testimony of consumer claimants at trial is not a prerequisite to recovery in a consumer protection action involving numerous similarly situated victims and that oral testimony is not the only method for establishing entitlement. We agree.

The purpose of the Maryland Consumer Protection Act, as it is expressed in § 13–102, is to "set certain minimum statewide standards for the protection of consumers", and the General Assembly has concluded that it "should take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices

---

2. The trial court noted that it "would love" to bifurcate the proceeding if it found liability and allow a Special Master to hear each individual's claim but that it felt its "hands [were] tied" by virtue of our decision in *Smith v. Attorney General,* 46 Md.App. 78, 415 A.2d 651 (1980). Although the language of *Smith,* standing alone, seems to require that the defendant have the opportunity to cross-examine each witness, the Court of Appeals has, nonetheless, sanctioned the use of general restitution orders. *See Consumer Protection v. Consumer Publishing,* 304 Md. 731, 501 A.2d 48 (1985).

from occurring in Maryland." Under Section 13–406(c)(2) of the Act, the court has the power to "enter any order of judgment necessary to [r]estore to a person any money ... acquired from him by means of any prohibited practice." Nowhere in the Act is there any indication that the framers intended live, in court, testimony to be a prerequisite to recovery. By providing for a "public remedy" through the Office of the Attorney General, in addition to the private right of action referred to in § 13–408, the General Assembly implicitly recognized that many consumers will be deterred from pursuing individual actions due to the cost and time involved in private litigation. The procedure required by the circuit court in this case flies in the face of the General Assembly's logic because it increases the "private" costs of the "public" remedy by requiring that each aggrieved individual come to court and give live testimony.

A logical and fiscally prudent procedure was approved in *Consumer Protection Division v. Consumer Publishing Co.*, 304 Md. 731, 501 A.2d 48 (1985).[3] In *Consumer Publishing*, the Consumer Protection Division of the Office of the Attorney General issued a cease and desist order which contained a restitution provision that required the offending company to restore the initial purchase price plus postage to all Maryland residents who purchased the products featured in the advertisements at issue. In support of its general order of restitution, the Division relied on the following evidence: (1) the offending company stipulated that the advertisements in evidence were run in Maryland on certain dates; (2) the weight-loss pills, which were the subject of the dispute, were only available through mail order; (3) the company testified to the amount of its Maryland sales during the relevant time period; and (4) the fact that the company never contended that Maryland consum-

---

**3.** Although *Consumer Publishing* involved an appeal from a cease and desist order accompanied by an order of restitution under Section 13–403 of the Act, its reasoning, logic and procedures are equally applicable to this case notwithstanding the fact that it is an order of the court entered pursuant to Section 13–406.

ers purchased the pills in any other way than from the advertisements.

On appeal, the company argued that the restitution order was unauthorized because no consumers testified that they had relied on the advertisements. The Court of Appeals disagreed and held that "the Division may enter a general order of restitution without proof of purchaser reliance, as long as the order provides a mechanism for processing individual claims." *Consumer Publishing*, 304 Md. at 775, 501 A.2d 48. The order was vacated, however, because the Court concluded the time period was too broad and because the Division's order did not provide a procedure for processing individual claims. *Id.* The Court then went on to outline the procedure to be followed:

> Purchasers should be notified that they may obtain a refund; in order to be entitled to such refund, they should be required to state that they relied on the false impressions created by the advertising. In this way, purchasers who were not deceived will not receive an "automatic" refund. It should not be necessary that each purchaser present additional evidence that he was actually deceived and relied on the misrepresentations in the advertisements. To require proof of reliance, beyond the purchaser's statement, would make recovery difficult and complicated.

304 Md. at 781, 501 A.2d 48.

■ In the case before us, we have similar evidence of liability. At trial, Andrews conceded that his divorce and the resultant ownership dispute culminated in the closing of the facility. He admitted that he hung a sign on the facility that it was "closed for repairs" but made no effort to tell consumers that it was not going to reopen. Andrews also conceded that he made no effort to sell or transfer ownership of the facility so that consumers could continue to enjoy their membership privileges and that no customer received any reimbursement for unprovided services. He also reviewed the facility's cash receipt journals reflecting membership payments for 1979, Grecian Spa's final year of

operation, and acknowledged that the journals listed the name of the consumer, the date and terms of the membership contract, and the amount paid to Grecian Spa.[4] Furthermore, testimony of Andrews from a related case established that both he and his wife treated the assets of Grecian Spa as their personal assets and paid personal bills from those funds. From this evidence alone, it is clear that the court was justified in finding that Andrews was personally liable for the amount rendered as a restitution judgment.

We hold that it was improper for the trial court to limit recovery to those persons who testified at trial. A procedure similar to that which was conducted in *Consumer Publishing* should be implemented here so that purchasers may be notified of their right to obtain a refund if they can produce relevant evidence concerning their Grecian Spa membership.[5] We note that in *Consumer Publishing*, the deceptive trade practices at issue concerned advertisements for mail-order weight loss pills and therefore it was necessary for each purchaser to show that they relied on the deceptive advertisements as a prerequisite to recovery. By contrast, the case *sub judice* involves individuals who entered into a contract for services, and therefore no proof of individual reliance is necessary. An implied condition of the purchaser's contract was that the spa would remain open.

## II.

█ We do not agree with the State's contention that those persons whose losses were documented in the account

---

**4.** The court found these journals to be "perfectly relevant [and] admissible, because they were records and books kept by Mr. Andrews in the ordinary course of business."

**5.** Our holding is not limited to consumers who purchased their memberships during 1979. We recognize that a number of complaints received by the Consumer Protection Division were from consumers who purchased their memberships prior to 1979, but that the trial revolved around those persons who joined in 1979 because that was the only year Grecian Spa produced its account books for, despite discovery requests to the contrary.

books, but who did not testify at trial, are nonetheless entitled to recovery as a matter of course. Grecian Spa's 1979 payment journals, in and of themselves, do not establish the necessary proof of entitlement to restitution and the amount of such entitlement for each of the consumers listed therein.[6] As the Court of Appeals said in *Consumer Publishing*, "[t]he Division may not simply require the mailing of refunds to all Maryland Consumers...." 304 Md. at 781, 501 A.2d 48. It is necessary for each individual consumer to show he or she purchased a Grecian Spa membership *and* is presently entitled to a refund i.e., did not transfer the membership to another person or receive reimbursement for it.

### III.

█ The trial court also erred in denying recovery to the two consumers who testified that they purchased their memberships from other Grecian Spa members. The evidence indicates that the transfers were sanctioned by Grecian Spa, and the receipt journals show that the facility received the $25.00 transfer fees required by the contracts; thus, the transferee-members "stepped into the shoes" of the original purchasers and have a right to pro rata recovery for the unexpired terms of their memberships.

The portion of the circuit court judgment and rulings which limited the right of recovery to those persons who testified at trial is hereby vacated, and the circuit court is instructed to issue a general restitution order forthwith. The court is further instructed to establish a procedure for determining each consumer's right to a refund. As we have mentioned, consideration should be given to the steps outlined by the Court of Appeals in *Consumer Publishing*.

---

**6.** Those consumers who purchased Grecian Spa memberships prior to 1979 must themselves provide additional evidence regarding their contract and payment information since the pre–1979 payment journals were not offered into evidence.

This holding is not limited to consumers who purchased Grecian Spa memberships in 1979 but include any person who held an unexpired membership on the date the facility closed.[7]

JUDGMENT AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID TWO-THIRDS BY APPELLANT AND ONE-THIRD BY APPELLEE.

---

**7.** We recognize, as the Court did in *Consumer Publishing,* that
[to] permit the [retention of] even a portion of the illicit profits would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom. (brackets in original)
We do not by this opinion intend to preclude the circuit court, upon remand, from implementing the above principle, if applicable, in this case.