**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0266n.06
Filed: April 8, 2005

No. 03-2341

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WILL TOLLIVER; TRADCO, INC., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FEDERAL REPUBLIC OF NIGERIA, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     COLE and GIBBONS, Circuit Judges, and SCHWARZER,[*] Senior District Judge

**WILLIAM W SCHWARZER, Senior District Judge.**  Plaintiffs-appellants Will Tolliver and Tradco, Inc. ("Tolliver") appeal the judgment of the district court granting the motion to dismiss and for summary judgment of defendants-appellees Federal Republic of Nigeria ("FRN"), Central Bank of Nigeria ("CBN"), and Nigerian National Petroleum Corporation ("NNPC," collectively with FRN and CBN, the "Government Defendants"). Tolliver alleges that in April 1993 he was contacted by representatives of the NNPC who proposed an engineering project to him. He further alleges that after signing a contract concerning this project and spending hundreds of hours performing work under the contract, he never received the funds promised to him. The Government Defendants

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

maintain that Tolliver never dealt with them or their authorized representatives.

Prior to trial, both parties moved for summary judgment. The district court held that Tolliver had offered no admissible evidence establishing that any of the commercial activities alleged in the pleadings were performed by representatives of the Government Defendants. It concluded that the Government Defendants were entitled to summary judgment because their sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), deprived the court of subject matter jurisdiction. For the reasons discussed below, we affirm.

## DISCUSSION

### I.   SOVEREIGN IMMUNITY UNDER THE FSIA

#### A.   *Tolliver's Evidence*

Tolliver asserts that he has submitted facts sufficient to establish the "commercial activity" exception to sovereign immunity under the FSIA. 28 U.S.C. § 1605(a)(2). Application of this exception requires finding both that the defendants claiming immunity engaged in a "commercial activity" and that the activity had a "direct effect in the United States." *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 816-18 (6th Cir. 2002); *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 726-30 (9th Cir. 1997). But a plaintiff must also establish that the actions or conduct in question were actually performed by the sovereign in question. *See* 28 U.S.C. § 1605(a)(2). On this issue, Tolliver's evidence failed to raise a genuine issue of material fact.

The principal factual support for Tolliver's contentions is his affidavit describing how he entered into the contract and fulfilled his duties under it. Tolliver alleges that he entered into a three-page written contract with the NNPC in June 1993. The contract allegedly provided that if the

NNPC implemented a solution suggested by Tolliver for a pipeline misalignment problem, Tolliver would be paid ten percent of the savings realized as a result of the solution, which was estimated in the contract to be $25 million. Tolliver alleges that he provided possible solutions in the form of several sketches. An additional affidavit, submitted by Larry Magnuson, a mechanical engineer, states that he prepared technical drawings related to pipelines for Tolliver in connection with a project supposedly for the NNPC.

Although Tolliver produced a written contract, he was unable to authenticate it as a contract signed on behalf of the NNPC. According to Tolliver, the contract was sent by fax and/or mail, so he never met, and did not know, the individuals with whom he was contracting. Tolliver was also unable to recall the name of the person who allegedly signed the contract on behalf of the NNPC and did not know the names of any of the individuals he supposedly communicated with at the NNPC in 1993. Tolliver argued that the phone numbers of the people with whom he dealt were similar to those used by the Government Defendants. However, a similarity in phone numbers falls short of tying the Government Defendants to the alleged contract.

Tolliver's evidence also included an affidavit by Donald Kilpatrick, which purports to identify one of the government officials involved in the contract process. However, since making the affidavit, Kilpatrick has asserted his Fifth Amendment right against self-incrimination in response to questions about his involvement in the events giving rise to this case. Thus, the district court properly refused to consider such evidence.[1]

---

[1]Tolliver asserts that the district court improperly struck the Kilpatrick Affidavit from the
(continued...)

Finally, Tolliver admits that he would only have been entitled to collect money under the contract if his so-called solution had been employed to solve the pipeline misalignment problems and a savings had been derived from that use. However, when asked whether his solution was actually used to solve the alleged pipeline problem, Tolliver responded, "I have no idea, no."

The evidence indicates that Tolliver may have been solicited for a commercial project, may have signed an agreement, may have created some sketches, and may have dealt with individuals regarding a project. This may be evidence of a "commercial activity," but not of a transaction with the Government Defendants. Tolliver's evidence failed to raise a genuine issue of material fact as to whether he had a contract with the Government Defendants.

### B. *Government Defendants' Evidence*

The Government Defendants provided the declarations of two Nigerian government officials, Otu Medo (Acting General Manager of Litigation Property Law Department of the NNPC) and Moses Adediran (Director of the Legal Department of the CBN), which, together with the documents submitted therewith, make it clear that Tolliver did not enter into a contract with the

---

[1](...continued)
record. The district court was correct in striking the Kilpatrick Affidavit. An affidavit should be stricken on a motion for summary judgment if the witness invokes the Fifth Amendment to shield himself from questioning during pre-trial discovery. *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) (affirming lower court which struck affidavit submitted in support of summary judgment motion after assertion of Fifth Amendment); *In re Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (striking of forfeiture claimant's affidavit submitted in opposition to a summary judgment motion proper where claimant later invoked Fifth Amendment privilege when the government took his deposition).

The court also properly refused to consider a telephone conversation allegedly between Kilpatrick and a Nigerian official, where the official was identified only based on Kilpatrick's recognition of his voice.

NNPC.

Medo's declaration unequivocally states that the NNPC never entered into a contract with Tolliver or his company, and that Tolliver never provided any services to the NNPC. The declaration also states that the signature and name of the person who allegedly signed the contract on behalf of the NNPC are not known to the NNPC. The contract is purportedly signed by the "Director of Contracts" of the NNPC, but there is no person at the NNPC with such a title. Additionally, the contract number and the telephone number on the alleged contract are not numbers used by the NNPC.

Medo's declaration establishes that the alleged contract and the manner in which it was purportedly awarded to Tolliver would have violated the NNPC's established procedures for awarding contracts. As Medo explained, contracts with the NNPC are subject to competitive bidding procedures, committee evaluation and review, and detailed documentation including a letter of intent, a formal contract, and submission by the contractor of a performance bond by an approved financial institution or insurance company. The alleged contract did not meet these requirements.

Medo's declaration is corroborated by documentary evidence, such as the NNPC's telephone directories for 1993 and 1994, which confirm that the telephone number on the contract is not an NNPC telephone number. Moreover, Medo's declaration is supported by Adediran's declaration, which states that the CBN, like the NNPC, has no record of any contract with Tolliver.

The Government Defendants also submitted the declaration and report of an expert document examiner, David A. Crown. Crown examined some twenty-seven documents offered by Tolliver. According to Crown, none of the documents are authentic. Crown based his conclusion on the

following facts: (1) some documents have distorted CBN logos which were apparently prepared by computer scanner; (2) the signatures of some named officials are inconsistent (meaning they were authored by multiple persons); (3) the signatures of some officials with different names were written by the same person; (4) some signatures are enlarged exact copies of other signatures (suggesting they were prepared by copying, scanning, or transposition); and (5) some document logos do not conform to the official document logos of the Nigerian Government. Tolliver failed to supply any expert document analysis to controvert Crown's analysis.

The uncontroverted evidence of the Government Defendant's establishes that the district court properly rejected Tolliver's contract claim.[2]

## II.   DISCOVERY

Tolliver argued in his motion for summary judgment that the Government Defendants failed to appropriately respond to his discovery requests, that the Government Defendants should not have been permitted to introduce certain evidence, and that discovery was unduly limited. Because Tolliver did not object to the magistrate judge's order regarding discovery or seek relief under

---

[2]Tolliver's counsel noted at oral argument that Crown's evidence proved nothing, because the documents examined by Crown are from a later period when Tolliver was communicating with individuals who, he says, had promised him payment of the amount due under the contract. Tolliver, with Kilpatrick acting as his agent, had numerous interactions with these individuals starting in 1999, culminating in a trip by Kilpatrick to England and Nigeria where, Tolliver alleges, Kilpatrick paid thousands of dollars to various Nigerians in order to "expedite" payment of the amount owed to Tolliver. However, as Crown and the Government Defendants note, none of the documentary evidence from this later period tends to establish in any way that Tolliver and the Government Defendants had a contractual relationship in 1993. Further, even if we agree with Tolliver that Crown's evidence, because it relates to interactions after 1999, does not conclusively establish that there was *not* a contract in 1993, Tolliver still has not put forth affirmative evidence from 1993 that would controvert the remaining evidence presented by the Government Defendants.

Rule 56(f), the district court did not abuse its discretion in denying relief.

**AFFIRMED**.