CHURCH & DWIGHT CO., INC. and Church & Dwight Virginia Co., Inc., Plaintiffs,

v.

KALOTI ENTERPRISES OF MICHIGAN, L.L.C., et al., Defendants.

No. 07 Civ. 0612(BMC).

United States District Court, E.D. New York.

Dec. 23, 2009.

Geoffrey Potter, Aron Fischer, Patterson Belknap Webb & Tyler LLP, for Plaintiffs.

Bruce Egert, Michael J. Cannon, Milber, Makris, Plousadis & Seiden, LLP, Perry Ian Tischler, Robert J. Aiello, Aiello & Cannick, Sanford Talkin, Talkin, Muccigrosso & Roberts LLP, Todd D. Greenberg, Addabbo & Greenberg, Joseph R. Vasile, William Goldman Scher, Garbarini and Scher, P.C., John L. Weichsel, Daniel Ioannis Zohny, Gary Adelman, Robinson Brog Leinwand Greene Genovese & Gluck, P.C., for Defendants.

Alex Trading Corp., Brooklyn, NY, pro se.

Dish Corp., Brooklyn, NY, pro se.

Omar Burghol, Brooklyn, NY, pro se.

Ala Burghol, Staten Island, NY, pro se.

### MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

Plaintiff Church & Dwight Co., Inc. ("Church & Dwight") is a Virginia-based consumer products company that manufactures Trojan-brand condoms. Plaintiff commenced this action against 46 defendants alleging that they trafficked in large quantities of counterfeit Trojan condoms. Plaintiff asserts that the following trademarks were violated: MAGNUM (Reg. No. 1,968,608), TROJAN (Reg. No. 544,-931), TROJAN–ENZ (Reg. Nos. 2,875,-092), "TRIPLE TESTED" SEAL (Reg. No. 2,203,169), MINT TINGLE (Reg. No. 2,990,218) and "WARRIOR HEAD" LOGO (Reg. No. 2,012,578) (collectively, the "Trojan Marks"). Pursuant to this Court's orders, plaintiff executed seizures at 37 different locations and seized more than 4

million counterfeit condoms. Plaintiff seeks entry of a permanent injunction, statutory and punitive damages, and attorneys' fees.

Presently before the Court is plaintiff's omnibus motion against all defendants for summary judgment and default judgment. Of the 46 defendants, 16 have failed to answer the complaint or otherwise appear in the action. Twelve have answered but have not opposed plaintiff's motion for summary judgment.[1] Only three of the responding defendants deny that they sold or participated in the sale of counterfeit Trojan-brand condoms. Indeed, many of the defendants have already pled guilty or been criminally indicted on counterfeiting charges in connection with the sale of counterfeit condoms.

## I. *Legal Framework*

### a. *Summary Judgment*

The controlling principles for summary judgment are familiar enough and "[t]he principles governing the grant of summary judgment are the same in trademark as in other actions." *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.,* 642 F.Supp. 1143, 1145 (S.D.N.Y.1986). A court may grant summary judgment if the pleadings and evidentiary submissions demonstrate the absence of material fact and the moving party is entitled to judgment as a matter of law. *Tasini v. New York Times Co.,* 206 F.3d 161, 165 (2d Cir.2000). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998). Once a party moves for summary judgment, to avoid the granting of the motion, the non-movant must come forward with specific

facts showing that a genuine issue for trial exists. *Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 134 (2d Cir.1999).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Conclusory allegations, speculation and conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). The substantive law governing a case will identify those facts that are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### b. *Liability under the Lanham Act*

Plaintiff claims trademark infringement under both § 32 and § 43 of the Lanham Act. An action for counterfeiting or trademark infringement under § 32 arises where "any person ... without the consent of the registrant ... use[s] in commerce ... any registered mark in connection with the sale ... of any goods ... [and] such use is likely to cause confusion...." 15 U.S.C. § 1114(1)(a).

Similarly, § 43(a), codified at 15 U.S.C. § 1125(a), provides civil liability for any person who "in connection with any goods ... uses in commerce any word, ... name, symbol, ... or any combination thereof, or any false designation of origin ... which ... is likely to cause confusion ... or to deceive as to the affiliation ... or as to the origin ... of the goods."

In order to prevail on a trademark infringement claim under sections 32 and 43(a) of the Lanham Act, plaintiff must demonstrate the following elements: (1) that plaintiff is the owner of a valid trademark; and (2) defendants used the

---

1. One of the 12 defendants, Crown USA Distributors, has since settled with Church & Dwight.

registrant's trademark in commerce without consent in a way likely to cause consumer confusion. *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir.2003). In a counterfeiting case, however, it is unnecessary to perform an in-depth, step-by-step examination of the likelihood of confusion because "counterfeit marks are inherently confusing." *Philip Morris USA Inc. v. Felizardo,* No. 03 Civ. 5891, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004). Plaintiff need not prove intent to recover on their Lanham Act claims; the statute provides for strict liability. *Cartier Intern. B.V. v. Ben–Menachem,* No. 06 Civ. 3917, 2008 WL 64005, at *12 (S.D.N.Y. Jan. 3, 2008).

Defendants do not challenge the validity of plaintiff's trademarks or the likelihood of consumer confusion. Thus, the sole issues to resolve on this motion are whether there are material issues of fact regarding (1) defendants' use of plaintiff's trademark in commerce without consent;[2] and (2) appropriate damages.

### c. *Damages under the Lanham Act*

Damages for counterfeiting are not always readily quantifiable. The Lanham Act therefore provides that "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits ..., an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services...." 15 U.S.C. § 1117(c). The award of statutory damages is particularly appropriate in the de-

fault judgment context where plaintiff is without the benefit of any disclosure by the infringer, leaving damages uncertain. *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y.1999). Plaintiff has elected to recover statutory damages.

For non-willful infringement, a plaintiff may recover "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold...." 15 U.S.C. § 1117(c)(1). If the use was willful, plaintiff may recover "not more than $1,000,000 per counterfeit mark." *Id.* at 1117(c)(2).[3] Courts have broad discretion in determining what constitutes an appropriate statutory damages award, *see Phillip Morris USA Inc. v. Marlboro Express,* No. CV–03–1161, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005), and have looked to the compensatory, punitive and deterrent impact of an award in assessing damages. *Nike v. Top Brand Co.,* No. 00 Civ. 8179, 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006).

The standard for willfulness is "whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Kepner–Tregoe, Inc. v. Vroom,* 186 F.3d 283, 288 (2d Cir.1999) (*quoting Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1382 (2d Cir.1993)). Courts are generally reluctant to dispose of a claim on summary judgment when mental state is at issue, but it is permissible to do so where there are

---

**2.** Only defendants Jian Rong Jiang, Lin Hu and Jian Lin Hu dispute whether they used counterfeit Trojan-brand condoms in commerce. As detailed herein, defendant Jiang has since pled guilty to knowingly trafficking in counterfeit Trojan-brand condoms.

**3.** The minimum and maximum statutory damages awards allowed under section 1117(c)

were doubled by a 2008 amendment to the law. Under the current statute, for non-willful infringement, plaintiff may recover "not less than $1,000 or more than $200,000" per mark per type of goods or services sold. For willful infringement, a plaintiff may now recover "not more than $2,000,000" per mark per type of goods or services sold.

sufficient undisputed material facts on the record. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 141 (2d Cir.1991).

Aside from the issue of willfulness, the critical threshold question regarding damages is how many "types of goods" there are for the purposes of the "per counterfeit mark per type of goods or services sold" calculation. Plaintiff urges the Court to award damages based on "five different types of Trojan-brand condoms." The position is not supported by the case-law.

In *Gucci America, Inc. v. MyReplicaHandbag.com,* No. 07 Civ. 2438, 2008 WL 512789, at *4 (S.D.N.Y. Feb. 26, 2008), plaintiff argued that it was entitled to a maximum statutory award of $424 million for each of the 424 types of different counterfeit handbags infringing the *Gucci* trademark. The court disagreed, ruling that "for the purpose of awarding damages, it seems unduly artificial to categorize the merchandize into separate 'types' for each subtle difference in a particular product's size, shape, color patter or fabric. Instead I believe that the separate 'types' should be based on the functional purposes of the product." *Id.* The court found that there were six types of goods infringed: wallets, watches, eyeglasses, handbags, belts, and handbag wallet sets. *See also Nike, Inc. v. Top Brand Co.,* 2006 WL 2946472, at *3 (separate statutory damages for Nike t-shirts, fleece sweatshirts and polo shirts); *Nike, Inc. v. Variety Wholesalers, Inc.,* 274 F.Supp.2d 1352, 1374 (S.D.Ga.2003) (separate statutory damages for Nike socks, shirts, sweatpants, and sweatshirts).

■ Somewhat surprisingly, plaintiff cites the *Gucci* and *Nike* decisions, acknowledges the "functional test" of determining "types of goods," and still argues that the five condoms at issue here—Mag-

num Lubricated, Ultra Ribbed Lubricated, Enz Lubricated, Mint Tingle and Ultra Thin Lubricated—are different types of goods. Despite plaintiff's assertions, it is clear that under the "functional test" articulated in *Gucci,* the different brands of condoms are more akin to the different types of handbags than handbags versus wallets or socks versus sweatpants. The condoms may be different in size or shape or even fabric and texture but they are not different in basic functionality. Accordingly, I find that there is one "type of good" for the purposes of calculating statutory damages. The maximum allowable statutory award in this case is therefore $6 million ($1 million statutory maximum for each of the six allegedly infringed trademarks). *See Chanel, Inc. v. French,* 05–61838–CIV, 2006 WL 3826780, at *4 (S.D.Fla. Dec. 27, 2006) ("If the Court takes handbags and sunglasses as two different types of goods, and there are seven trademarks at issue being used with both types of goods, then the Plaintiff has committed, apropos this suit, fourteen willful trademark violations under 15 U.S.C. § 1117(c)").

■■ For its state-law claims, plaintiff seeks punitive damages in addition to damages under the Lanham Act for the most "egregious infringers" among the defendants. Although the Lanham Act does not authorize an award of punitive damages, plaintiff can still resort to applicable state law for punitive damages. *Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.,* 672 F.2d 1095, 1106 (2d Cir. 1982) (New York law authorizes punitive damages for unfair competition, and federal copyright policy against punitive damages for unfair competition is irrelevant). Under New York law, a plaintiff in an unfair competition case can recover punitive damages if the "defendant's conduct has constituted 'gross, wanton, or willful

fraud or other morally culpable conduct' to an extreme degree." *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 371 (2d Cir.1988) (*quoting Borkowski v. Borkowski,* 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976)).

However, I decline to impose punitive damages on any of the defendants. Very few courts in this Circuit have even awarded maximum damages on a per mark per type of good basis and those that have have declined to impose further punitive or treble damages. *See, e.g., Gucci Am., Inc. v. MyReplicaHandbag.com,* 2008 WL 512789, at *5; *Malletier v. Carducci Leather Fashions, Inc.,* 648 F.Supp.2d 501, 505–06 (S.D.N.Y.2009) (noting that in the few cases of maximum statutory awards there was reason to believe defendants' sales and production of counterfeits numbered in the hundreds of thousands, if not millions of goods). Indeed, most courts have issued awards far below the statutory maximum, particularly where plaintiff does not have concrete information about defendants' actual sales figures. *E.g., Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.,* 06 Civ. 7827, 2008 WL 4449533, at *5–6 (S.D.N.Y. Oct. 2, 2008).

█ Awarding punitive damages on the facts here would be cumulative since statutory damages awards under the Lanham Act are already intended to take into account the goals of deterrence and punishment, *Nike v. Top Brand Co.,* 2006 WL 2946472, at *2, and because plaintiff has not convinced me why the maximum allowable damages under § 1117(c), without more, do not sufficiently serve these goals. *See Malletier v. Carducci Leather Fashions, Inc.,* 648 F.Supp.2d at 504–05 (recognizing that "a statutory award should incorporate not only a compensatory, but also a punitive component" and finding punitive damages unnecessary because the "substantial sum" awarded included a punitive component).

#### d. Attorneys' Fees

█ Plaintiff seeks attorneys' fees from those defendants who willfully infringed plaintiff's trademarks. A court may award attorneys' fees in its discretion for purposes of compensation and deterrence. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Knitwaves, Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1011 (2d Cir.1995). In trademark infringement cases, an award of attorneys' fees is warranted in "exceptional circumstances". *See Kepner–Tregoe, Inc.,* 186 F.3d at 289. Although at least one district court has declined to award attorneys' fees in addition to statutory damages under § 1117(c), *see Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 522 (S.D.N.Y.2004), most courts have found both appropriate in the "exceptional case" of willful infringement. *E.g., Nike, Inc. v. Top Brand Co.,* 2006 WL 2946472, at *3; *Silhouette Int'l Schmied AG v. Vachik Chakhbazian,* No. 04 Civ. 3613, 2004 WL 2211660, at *3 (S.D.N.Y. Oct. 4, 2004); *see also Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 281 (3d Cir.2000) (finding "exceptional" for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful). Investigator fees are permitted as part of attorneys' fees and/or costs. *E.g., Ahava (USA), Inc. v. J.W.G., Ltd.,* 286 F.Supp.2d 321, 325 (S.D.N.Y.2003).

Because plaintiff has not submitted any documentation to support the amount of fees incurred, I will order an inquest as to attorneys' fees for the willfully infringing defendants. *See e.g., Nike, Inc. v. Top Brand Co. Ltd.,* No. 00 Civ. 8179, 2005 WL 1654859, at *12 (S.D.N.Y. July 13, 2005)

(referring the case to a magistrate judge to determine attorneys' fees).

### e. Injunctive Relief

Plaintiff also seeks to convert the preliminary injunction previously entered by this Court into a permanent injunction enjoining defendants from future trademark infringement.[4] Section 34(a) of the Lanham Act provides courts with the "power to grant injunctions according to the principles of equity and upon such terms as the Court may deem reasonable to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). To obtain a permanent injunction plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. E.g., Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F.Supp.2d 284, 289 (S.D.N.Y.2003). In the Second Circuit, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 129 (2d Cir.2004).

## II. Defaulting Defendants

The following defendants have failed to answer the complaint or otherwise appear in the action:

- Michael Mosodeen
- T & L Trading Company
- Extreme Supplies LLC
- Omar Al–Atoom
- Vikas Gupta
- Y & P Wholesale, Inc.
- Yuan Ping Trading Inc.
- Qi Ke Huang
- Miao Chen
- David Tang
- Zeng Chen
- Ping Zao

Plaintiff has sufficiently established the liability of these defendants. Where, as here, the Court determines that a defendant is in default, it is almost universally deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir.2006). Only in "very narrow, exceptional circumstances may a court find an allegation not well-pleaded." In re Crazy Eddie Sec. Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y. 1996) (internal citations omitted).

This is not one of the narrow or exceptional circumstances. Plaintiff has adequately described the defaulting defendants' trademark infringement. See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006) ("in the case at bar, [defendant's] willfulness, in violating the trademark law, is established by virtue of its default in this action.") (citing Tiffany (NJ) v. Luban, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003)). Default judgment with respect to these defendants is GRANTED and the preliminary injunctions entered by this Court shall be converted to permanent injunctions.

However, while a party's default is deemed to constitute a concession of all allegations of liability, "it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992). A

---

4. The preliminary injunctions entered by this Court as to the defendants were generally the same. Defendants and their agents, servants, employees and all other persons in concert and/or participating with them were enjoined from infringing the Trojan Marks or otherwise diluting or unfairly competing with plaintiffs in the sale, manufacture or distribution of Trojan-brand condoms.

plaintiff must substantiate a claim with evidence to prove the extent of damages before the entry of a final default judgment, and the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997). Where the issue is statutory damages, inquest by paper record is particularly appropriate. *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002).

■ As noted, plaintiff has elected to recover statutory damages from all defendants under 15 U.S.C. § 1117(c) instead of actual damages. The statutory damages provision of the Lanham Act for willful infringement "does not provide guidelines for courts to use in determining an appropriate award, as it is only limited by what the court considers just." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d at 520. However, courts have looked to the Copyright Act for assistance in determining what factors should inform an award of statutory damages pursuant to 15 U.S.C. § 1117(c). These factors include:

> (1) The expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; (7) the potential for discouraging the defendant.

*See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, 2006 WL 728407, at *6. The damages award against each of the defendants, assessed in light of these factors

and the plaintiff's evidence, is set forth below. In determining statutory damages for the many defendants here, I am particularly mindful of two factors: (1) where along the chain of counterfeit distribution they are located; and (2) whether they dealt in large-scale distribution of counterfeit Trojan condoms.

### a. Michael Mosodeen

■ Defendant Mosodeen, who does business as FourM Vending, did not answer or otherwise respond to the complaint. On June 5, 2006, the Clerk of this Court issued an Entry of Default pursuant to Fed.R.Civ.P. 55(a) against him.

Plaintiff has produced evidence showing that on February 23, 2007, investigators purchased four varieties of Trojan-brand counterfeit condoms at a Stop N Go store in Bridgewater, New Jersey. An invoice produced by the store indicated that FourM Vending had supplied the counterfeit condoms. Among the samples purchased by plaintiff's investigators were Ultra Ribbed, Ultra Thin Lubricated, Magnum and Trojan–ENZ Lubricated. These brands utilize five Trojan trademarks.

By virtue of Mosodeen's default, plaintiff is entitled to a finding of trademark infringement. However, plaintiff has not alleged that Mosodeen trafficked in large-scale quantities of counterfeit condoms, like some of the other defendants. From the record evidence it appears that Mosodeen passed along limited amounts of condoms received from large distributors to small convenience stores. Plaintiff is therefore entitled to the entry of a permanent injunction and statutory damages in the amount of $50,000. This sum is sufficient to both compensate plaintiff for its losses and to deter Mosodeen from violating plaintiff's trademarks again.

### b. T & L Trading Company and David Tang

Defendants T & L Trading Company and David Tang have failed to answer the complaint and are in default. On June 5, 2009 the Clerk of this Court issued an Entry of Default as to T & L Trading Co. and on June 11, 2009, the Clerk entered default as to David Tang.

Plaintiff alleges that T & L Trading, run by Tang, trafficked in thousands of counterfeit Trojan-brand condoms. Plaintiff maintains that state law enforcement authorities, accompanied by counsel for plaintiff and private investigators, executed a seizure order issued by this Court at T & L Trading's location in Brooklyn, New York and recovered over 7,120 counterfeit Magnum brand condoms. At his deposition, Tang testified that he purchased the condoms from two "jobbers," who brought the condoms from the back of their van and did not ask them whether the condoms were authentic.

Defendants' default is sufficient for me to find trademark infringement, and plaintiff's proffered evidence is sufficient to award statutory damages. Plaintiff requests damages per mark per product type for the highest statutory award in the absence of willfulness, or $100,000, because of the significant volume of trafficking in counterfeit condoms. I agree. Magnum brand condoms utilize four Trojan trademarks. Plaintiff is therefore awarded $400,000 in statutory damages and is entitled to a permanent injunction.

### c. Omar Al Atoom and Extreme Supplies LLC

Defendant Extreme Supplies LLC and its principal Omar Al Atoom have not answered the complaint and the Clerk of the Court issued an Entry of Default as to both defendants on June 5, 2009.

Plaintiff's investigators visited non-party Seaway on March 2, 2007 and obtained invoices indicating that all purported Trojan Mint Tingle condoms in stock at Seaway were purchased from defendant Extreme Supplies. The condoms were examined and found to be counterfeit. The purchasing manager at the store stated that Seaway bought condoms from Extreme Supplies on more than one occasion. Subsequently, law enforcement authorities executed this Court's seizure order at Extreme Supplies' location in Clifton, New Jersey, finding and seizing fifty-one counterfeit Trojan condoms as well as invoices from defendants Y & P Wholesale and Yuan Ping, other defendants in the action, for the purchase of the counterfeit condoms. The condoms seized included Magnum and Ultra Ribbed condoms. Thus, the uncontroverted record indicates that Extreme Supplies and Omar Al Atoom bought and supplied counterfeit Trojan-brand condoms containing five trademarks. Plaintiff is entitled to statutory damages in the amount of $500,000 and a permanent injunction.

### d. Vikas Gupta

Defendant Vikas Gupta has not answered or otherwise responded to the complaint. The Clerk of this Court issued an Entry of Default on June 5, 2006.

On February 8, 2008, defendant Gupta was caught along with defendant Chom Sun So in possession of approximately 600,000 counterfeit Trojan condoms. He was subsequently indicted in New Jersey Superior Court for Possession of Counterfeit Goods in the Second Degree (an intentional crime). At his deposition in this case, Gupta exercised his Fifth Amendment right against self-incrimination in response to all questions regarding his involvement in the sale of counterfeit condoms. In light of his default and the

record evidence of significant involvement in counterfeiting, I find defendant Gupta's infringement to be willful. The quantity alone demonstrates willfulness. *See Philip Morris USA Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D.Cal.2003). Plaintiff is entitled to the maximum statutory award of $1,000,000 plus attorneys' fees and the entry of a permanent injunction.

### e. Y & P Wholesale, Inc, Yuan Ping Trading Inc., Qi Ke Huang, and Miao Chen

Defendants Miao Chen, Qi Ke Huang, Yuang Ping Trading, Inc., and Y & P Wholesale, Inc. (collectively, the "Y & P defendants") have failed to answer plaintiff's complaint.

Defendants Huang and Chen worked for Y & P Wholesale, the two sharing responsibility for setting prices on the condoms sold and placing and receiving orders. Y & P Wholesale, Inc and Y & P Imports operate as part of the same company. According to defendant Huang, the two companies, "are together, work together." Defendants Huang and Chen do not dispute that they bought large quantities of purported Trojan-brand condoms. In fact, defendant Huang indicated at his deposition that he knew that "somebody from New Jersey . . . somebody from the Health Department" came to Y & P Wholesale and spoke to defendant Chen and told her that the Trojan condoms they were selling might be counterfeit. Despite this admonition, defendant Huang recalled that Y & P Wholesale "just tried to sell the remainder of the goods." Y & P Wholesale also purchased significant amounts of condoms from defendant Wang and defendant Mizrahi of Unlimited Supplies. A Y & P Wholesale purchase order from Unlimited Supplies indicates that Y & P Wholesale purchased at least 2,880 three-packs of purported Trojan condoms from Unlimited Supplies and invoices seized at defendant Extreme Supplies indicates that it purchased Trojan-brand condoms from Y & P. Defendant Wang testified that he sold more than 120 cartons of Trojan-condoms to Y & P, each containing forty or eighty dozen three-packs of Trojan-brand condoms. As discussed herein, defendant Wang was ultimately found in possession of more than 1.5 million counterfeit condoms.

Though by virtue of their default, the Y & P defendants have admitted plaintiff's allegation that they willfully infringed Trojan trademarks, there is ample record evidence supporting this conclusion. Y & P always paid in cash for the condoms it received, paying as much as $19,720 in cash. Y & P paid as low as less than half the list wholesale price charged for genuine Trojan products. And if the Y & P defendants did not have actual knowledge that the condoms were counterfeit before the visit from the individual believed to be a health department official, it is clear that they were at least willfully blind. Defendant Huang testified that he asked defendant Wang about the source of the condoms, but Wang refused to answer. When asked why he did not inquire further, Wang simply stated, "I guess he did that on purpose, but I did not really care. We just buy and sell things."

The Y & P defendants have willfully infringed plaintiff's trademarks. Plaintiff has alleged that Y & P sold Trojan Magnum, Trojan Lubricated and Ultra Thin Lubricated condoms. These products bear a total of four different trademarks. Plaintiff's motion for default judgment is granted and plaintiff is awarded $4 million, its attorneys' fees and is entitled to a permanent injunction.

### f. Palmira Distributors, Inc.

Palmira Distributors, Inc. has not answered or otherwise responded to plain-

tiff's complaint. On May 1, 2007, plaintiff's investigator purchased counterfeit Trojan Magnum condoms from the Harlem's Finest Deli. The owner of Harlem's Finest Deli indicated that he purchases all of his purported Trojan condoms from Palmira Distributors. Six days later, on May 7, 2007, the investigator visited Palmira Distributors and purchased the same counterfeit Magnum condoms. At her deposition, Maria Parra, the owner of Palmira Distributors, admitted selling the counterfeits to Harlem's Finest Deli and stated that her supplier for the condoms was defendant T & L Trading. For these reasons, default judgment against Palmira Distributors is granted. Palmira, like defendant Mosodeen, passed on a limited amount of counterfeit condoms from a much larger supplier. Plaintiff is therefore awarded $40,000 in statutory damages and is entitled to the entry of a permanent injunction.

### g. Top Sale Trade, Inc., Jason Zhang and Shao Zhen Qu

Plaintiff alleges that defendant Jason Zhang, through his company Top Sale Trade, Inc., sold nearly one million counterfeit Trojan-brand condoms. Neither Top Sale, Inc. nor defendant Zhang nor his wife defendant Shao Zhen Qu[5] have answered or otherwise responded to the complaint.

Plaintiff's proffered evidence supports its allegations. On October 4, 2006, Syed Raza pled guilty in this Court to transporting shipments of counterfeit condoms from New York to Texas. He admitted to selling to three entities in Texas. In March 2006, the Federal Drug Administration seized close to 1 million counterfeit Trojan-brand condoms from these entities. Mr. Raza stated that he purchased all the condoms sold to Texas from defendant Jason Zhang. Zhang admits to having sold approximately 200,000 condoms to Raza. No records were kept of his transactions with Raza but Zhang testified that he bought the condoms from Jian Rong Jiang, a defendant in this case, and left the "payee" line blank on all the checks he wrote from the Top Sale bank account without questioning why Jiang requested unattributed checks. Like many of the other defendants, the prices Zhang paid were wildly out of line with the wholesale price of Trojan-brand condoms and the circumstances surrounding the delivery of the condoms were highly suspicious. Zhang testified that he was met by a stranger at a storage unit who unloaded the condoms from a truck. Before delivering the condoms to Raza, Zhang rented a car from an individual specified by Raza near Raza's warehouse.

The record reflects significant involvement in illicit counterfeit trafficking by the Top Sale defendants. Default judgment is granted. Because defendant Zhang has provided little to no information about which kind of condoms were bought and sold, but has indicated his transaction involved "one box of each color" I will award plaintiff the maximum statutory damages allowable for the six trademarks they have maintained were infringed. Plaintiff is awarded $6 million plus attorneys' fees and is entitled to permanent injunctive relief.

---

**5.** Plaintiff has proffered no evidence suggesting that defendant Shao Zhen Qu trafficked in counterfeit Trojan-brand condoms. While defendant Qu's default establishes liability, I decline to award damages in the absence of such evidence. See Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.1999) (holding that once the court is satisfied that the facts alleged state a valid cause of action, the plaintiff must prove its damages to a "reasonable certainty"—the defendant's default does not relieve the plaintiff of this burden).

### h. Zeng Chen, Ping Zao and Jinkai Chen

Defendants Zeng Chen, Ping Zao and Jinkai Chen did not answer or otherwise respond to the complaint. On November 17, 2009, the Clerk of this Court entered default pursuant to Fed.R.Civ.P. 55(a) as to Zeng Chen and Ping Zao. On December 1, 2009, the Clerk entered default as to Jinkai Chen.

Plaintiffs alleged that on January 18, 2007 at approximately 8:00 PM, defendants Zeng Chen, Ping Zao and Jinkai Chen were arrested in a Bronx parking lot as they attempted to take delivery of approximately 192,000 individual three-packs of counterfeit Trojan-brand condoms (576,000 in total). They were subsequently indicted in New York State Supreme Court, Bronx County, on charges of Trademark Counterfeiting in the First and Second Degree, in violation of New York State Penal Law Article 165. All three defendants have failed to answer or otherwise respond to the complaint. By virtue of their default, these defendants have admitted plaintiff's allegation that they acted knowingly and intentionally or with reckless disregard for the authenticity of the goods they trafficked. *See Malletier v. Carducci Leather Fashions, Inc.,* 648 F.Supp.2d 501 (S.D.N.Y.2009). Plaintiff is entitled to damages in the sum of $1 million plus attorneys' fees and the entry of a permanent injunction.

### III. Defendants Failing to Oppose Summary Judgment

The following defendants have answered the complaint, but failed to respond to plaintiff's motion for summary judgment:

- Chom Sun So a/k/a Chom Sun Paek
- Seung Won Paek a/k/a Tommy Paek
- New York New Kor Trading, Inc
- Unlimited Supplies
- Dubi Mizrahi
- Ala Burghol
- Omar Burghol
- Alex Trading Corp.
- Raed Zaghari
- Jerusalem Enterprises I Corp.
- United Distribution Corp.

Plaintiff's 56.1 statements are deemed undisputed with respect to these entities and individuals, in light of their failure to respond. *See Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

### a. Unlimited Supplies Inc. and Dubi Mizrahi

Defendant Dubi Mizrahi is the sole owner of defendant Unlimited Supplies, Inc., a wholesaler. The uncontested record evidence demonstrates that Unlimited Supplies purchased approximately 169,000 counterfeit condoms from two defendants in this action, defendant Paek and defendant Wang, buying five types of Trojan-brand condoms bearing six different trademarks, under extremely suspicious circumstances. Defendant Mizrahi paid for the condoms in cash and did not ask for a receipt or any other paperwork documenting the sale. He testified that because of the prices of the condoms, he "start [sic] to get the feeling that it's not real." After confronting defendant Paek about the authenticity of the product he had bought and learning that they were, in fact, counterfeits, Mizrahi still sold the remainder of his inventory of counterfeit condoms. Plaintiff seeks the maximum statutory damages for non-willful infringement.

Plaintiff's motion for summary judgment with respect to Unlimited Supplies and Dubi Mizrahi is granted and plaintiff is

entitled to $600,000 in statutory damages and the entry of a permanent injunction.

### b. Alex Trading Corp., Ala Burghol and Omar Burghol

None of the Alex Trading defendants have responded to plaintiff's motion for summary judgment. Defendant Alex Trading Corp. is a family business run by defendants Ala Burghol and Omar Burhal. Ala Burghol was the principal and admitted to having sold the counterfeits to Kaloti Enterprises, another defendant in this action. Omar Burghol made the initial contact between the Burghols and Kaloti Enterprises and made several trips to visit Kaloti Enterprises. Both Ala and Omar Burghol were "moving, active, conscious force[s]" behind Alex Trading's infringing activities and the infringement was willful. *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 913 (E.D.N.Y.1988) (where the facts show that a corporate employee was the "moving, active, conscious force behind [the defendant corporation's] infringement," personal liability will attach).

Ala Burghol testified that he bought the condoms from an individual named "Mark" who came to the Alex Trading warehouse with a truck filled with condoms. Burghol bought the condoms at 43% of their wholesale value and never once inquired whether "Mark" was an authorized distributor of Church & Dwight condoms or whether he had purchased them from an authorized distributor. In fact, Burghol did not even ask "Mark" his last name. Burghol paid $74,000 in cash for Duracell branded batteries and Trojan-branded condoms without any inquiry whatsoever. At the very least, the circumstances surrounding this transaction demonstrate a reckless disregard for the authenticity of the product that Alex Trading was buying.

The Burghols' conduct in this litigation further supports a finding of willfulness.

In response to this Court's Order to Show Cause, Ala Burghol filed an affidavit indicating that he had purchased the counterfeit condoms from Goren Sales, Ltd., a Canadian Company, and filed invoices with the affidavit, which were never produced during the search of the Alex Trading warehouse and Ala Burghol's home. Relying on the affidavit, plaintiff conducted a seizure at Goren Sales' warehouse in Ontario, Canada and found nothing in the company's well organized records to indicate that it had ever dealt in condoms. When asked at disposition why he had not produced the invoices when plaintiff first searched the warehouse, Burghol, incredibly, testified that he had been carrying the invoices in his pocket but forgot to produce them. The invoices were produced over a month later in perfect condition.

Alex Trading, Ala Burghol and Omar Burghol willfully infringed five Trojan trademarks. Plaintiff is entitled to $5 million in statutory damages, attorneys' fees—including investigation fees—and the entry of a permanent injunction.

### c. Jerusalem Enterprises I Corp. and Raed Zaghari

On May 11, 2007, an investigator for plaintiff purchased counterfeit Trojan Magnum and Trojan ENZ lubricated condoms from the Star Deli in Harlem. The owner of the store was present and told the investigator that he purchased the condoms from defendant Jerusalem Enterprises I Corp. ("Jerusalem Enterprises") and provided a copy of an invoice reflecting his purchase of Trojan Enz condoms. Defendant Raed Zaghari is the principal of Jerusalem Enterprises. A seizure order executed at Jerusalem Enterprise's warehouse returned large quantities of baby formula, which had the labels removed, believed to have been bought from Kaloti Enterprises, another defendant in this action. Defendant Zaghari could not credi-

bly explain why his company had thirty cases of unlabeled baby formula and indicated that Jerusalem Enterprises routinely supplies between 200 to 250 convenience stores with Trojan condoms on an as-needed basis. Despite the suspicious circumstantial evidence, plaintiff has proffered only the few purchased counterfeit condoms as evidence of defendants' Trojan trademark infringement. Plaintiff is therefore entitled to $50,000 in statutory damages and the entry of a permanent injunction.

### d. New York New Kor Trading, Inc., Chom Sun So, and Seung Won Paek

Defendants Chom Sun So and her husband, defendant Seung Won Paek, owned defendant New York New Kor Trading, Inc. ("New Kor" and collectively the "New Kor defendants"). As with the other defendants, plaintiff used private investigators to trace counterfeit condoms back to New Kor. On March 28, 2007, an investigator for plaintiff visited New Kor's location and purchased 12 dozen boxes of counterfeit Trojan ENZ lubricated condoms and Trojan Magnum brand counterfeit condoms from defendant Paek. On April 9, 2007, plaintiff executed the Court's seizure order and 10,800 counterfeit condoms were seized. Plaintiff subsequently discovered that defendant Paek had sold 169,920 counterfeit condoms to defendant Mizrahi for ultimate distribution in Michigan. Defendant Mizrahi testified that defendant Paek told him that the condoms were fake.

On February 8, 2008, members of the New Jersey State Police Cargo Theft Unit arrested defendant So for trademark counterfeiting. The New Jersey State Police seized approximately 192,000 3-packs of purported Trojan ENZ and Trojan Magnum condoms. Mrs. So pled guilty to illegally trafficking in counterfeit condoms before the Superior Court of New Jersey. Despite the plea, the individual New Kor defendants have refused to produce discovery and refused to testify in this suit. See, e.g., Nike, Inc. v. Top Brand, Co., 2006 WL 2946472, at *2 (defendants' failure to provide evidence and obstructionist behavior throughout litigation was a factor weighing towards a grant of the maximum in statutory damages). So's conduct violated this Court's Order of April 11, 2007, enjoining the New Kor defendants from selling or distributing counterfeit Trojan-brand condoms.

■■■ In total, the New Kor defendants were caught with over 800,000 counterfeit condoms. They infringed five Trojan-brand condoms bearing a total of six trademarks. By virtue of their failure to respond to the summary judgment motion, the New Kor defendants may be deemed willful infringers.[6] See Burberry Ltd. v. Euro Moda, Inc., No. 08 Civ. 5781, 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009); see also Chloe v. Zarafshan, 06-cv-3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."). In any event, the size of defendants' infringing operations, the willfulness of their infringing conduct and their behavior in this litigation, all point towards a maximum statutory award. Plaintiff's motion for summary judgment is

---

**6.** Defendant Seung Won Paek, individually, has filed a memorandum of law in opposition to plaintiff's motion for summary judgment, contesting plaintiff's calculation of damages but conceding liability. I agree with much of defendant Paek's arguments concerning punitive damages and the calculation of statutory fees. For this reason, the New Kor defendants' are liable for $6 million in damages for their willful violation rather than the $68 million sought by plaintiff.

granted. Plaintiff is entitled to $6 million in statutory damages, attorneys' fees and the entry of a permanent injunction.

#### e. United Distribution Corp.

On May 1, 2007, an investigator for plaintiff purchased counterfeit Trojan Magnum condoms from non-party Harlem's Gourmet Deli. An employee of the store indicated that all of the store's condoms were purchased from defendant United Distribution Corp. and provided an invoice dated April 30, 2007 reflecting the sale of purported Trojan Magnum condoms from United Distribution Corp. A seizure order of this Court executed at United Distribution's location in Brooklyn, New York yielded 1,009 counterfeit Trojan-brand condoms. Thus, the uncontroverted record evidence demonstrates that defendant United Distribution used plaintiff's trademark in commerce without consent and in a manner likely to cause consumer confusion. Defendant United Distribution Corp. is liable for trademark infringement. In the absence of any evidence demonstrating that United Distribution trafficked in large scale quantities of counterfeit condoms or any indication that United Distribution willfully infringed, I award plaintiff $40,000 in statutory damages. Plaintiff is also entitled to a permanent injunction.

### IV. Opposing Defendants
#### a. Kaloti defendants

The Kaloti defendants do not dispute the facts and circumstances giving rise to the complaint. On or about February 2007, the Kaloti defendants purchased approximately 230,000 counterfeit Trojan condoms from defendant Alex Trading Corp. ("Alex Trading") and sold them to Quality King Distributors, Inc. ("Quality King"). Un-like some of the other defendants, the Kaloti defendants participated in a single transaction involving the purchase and sale of counterfeit Trojan condoms.

Defendants Kaloti Enterprises of Michigan, L.L.C., d/b/a Kaloti Enterprises, Raseem Kaloti and Isaac Kaloti partially oppose plaintiff's motion for summary judgment, contending that as a threshold matter, Kaloti Wholesale, Inc. d/b/a Kaloti Enterprises is the proper corporate entity rather than Kaloti Enterprises of Michigan, L.L.C., the entity listed in the complaint. The Kaloti defendants concede that the admissible evidence demonstrates the liability of Kaloti Wholesale as well as Isaac Kaloti for infringement under §§ 1114(1)(a) and 1125(a) and consent to a substitution of parties. Plaintiff's motion to substitute Kaloti Wholesale, Inc. for Kaloti Enterprises of Michigan, L.L.C. is therefore granted and plaintiff's motion for summary judgment on liability with respect to Kaloti Wholesale, Inc. and Isaac Kaloti is also granted.[7]

Having conceded liability for infringement with respect to Isaac Kaloti and Kaloti Wholesale, Inc., the Kaloti defendants assert two main challenges to plaintiff's summary judgment motion: (1) defendant Raseem Kaloti, a Kaloti corporate officer, should not face individual personal liability as a moving, active and conscious force behind the alleged illicit transaction; and (2) material issues of fact exist regarding the willfulness of the Kaloti defendants' infringement.

 I agree on both counts. The sole allegation with respect to defendant Raseem Kaloti for the illegal transaction is that he instructed another employee of Kaloti Enterprises, Ron Delong, to seek

---

**7.** Plaintiffs' motion for summary judgment with respect to Kaloti Enterprises of Michigan, L.L.C., the wrong corporate entity, is therefore denied as moot.

payment from Quality King for the condoms. This involvement, by itself, does not reflect the "moving, active, conscious force" required in a counterfeiting activity to hold a corporate officer liable for the infringement. *See Bambu Sales v. Sultana Crackers, Inc.*, 683 F.Supp. at 913; *cf. Martal Cosmetics, Ltd. v. Int'l Beauty Exch. Inc.*, No. CV–01–7595, 2007 WL 895697, *23 (E.D.N.Y. March 22, 2007) (a showing that the officer "authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability"). Defendant Raseem Kaloti had no contact with the entity selling the condoms, Alex Trading, and had no contact with the entity buying the condoms, Quality King. Indeed, the record evidence demonstrates that Raseem Kaloti first learned of the transaction only after becoming aware that Kaloti Enterprises did not receive payment from Quality King once the transaction had been completed. Despite plaintiff's assertions, the fact that Raseem Kaloti was a 50% owner of Kaloti Enterprises does not automatically give rise to personal liability.

*Cartier v. Aaron Faber Inc.*, 512 F.Supp.2d 165 (S.D.N.Y.2007), makes the point. There, plaintiff argued that defendant corporation's two principals, each 50% owners of the company, were individually liable for the infringing acts of the corporation. The record evidence, however, indicated that only one principal was the "moving, active conscious force" behind the corporation's infringement. The testimony of the other principal did not indicate that he had an active role in the infringing activities of the company. The court therefore denied plaintiff's motion for summary judgment as to individual liability with respect to one of the corporation's principals while granting summary judgment against the other. *Id.* at 170.

I take the same view here. The record evidence demonstrates that Isaac Kaloti, the other 50% owner of Kaloti Enterprises, personally purchased the counterfeit condoms and supervised their shipment to Quality King. The evidence does not suggest that Raseem Kaloti played an active role in the transaction and I decline to impose liability as matter of law strictly on the basis of his position in the company. At the very least, there remains a material issue of fact for the jury regarding his role in this one transaction. Summary judgment is therefore denied.

I also agree with the Kaloti defendants that a finding of willfulness for defendant Isaac Kaloti on this record is not warranted. As noted, courts in this Circuit recognize that caution should be exercised in granting summary judgment when credibility assessments and state of mind are at issue. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, No. 04–CV–2293, 2007 WL 74304 (E.D.N.Y.2007). If there is any evidence that could support a jury's verdict for the non-moving party, summary judgment is inappropriate. *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir.2006).

While not overwhelming, there is sufficient evidence in the record to support a jury finding that Isaac Kaloti and Kaloti Enterprises did not act with willful intent. The Kaloti defendants testified that they "neither knew nor had reason to suspect" that they were buying and selling counterfeit condoms. Isaac Kaloti took no significant affirmative steps but did seek the assurances of his supplier, Ala Burghol of Alex Trading, that "the product [was] good." Kaloti explained that he trusted the assurance because he "had no reason to suspect" their "longstanding trusted prod-

uct supplier[ ]." There certainly may have been suspicious circumstances, as plaintiff points out—significantly lower prices, other suspected counterfeit products sold by the dealer—that might have tipped Isaac Kaloti off to the counterfeit nature of the condoms, but I cannot conclude as a matter of law that Kaloti acted willfully. His credibility is very much in issue. Whether he knowingly purchased and sold counterfeit goods or acted with reckless disregard for their authenticity is for a jury to decide.

### b. Dollar 99 Defendants and Jian Rong Jiang

Much of the force of the arguments set forth in the Dollar 99 defendants' opposition to plaintiff's motion for summary judgment was lost when defendant Jian Wang and Jian Rong Jiang pled guilty in this Court to knowingly and intentionally trafficking in counterfeit Trojan-brand condoms.[8] Defendant Wang allocuted at his plea hearing on November 17, 2009 that he "knew that the counterfeit goods would likely cause confusion and would also deceive buyers and the general public." Wang further testified that he rented a warehouse in Hicksville, New York to store the condoms and at the time of his arrest had sold counterfeit condoms and was intending to sell more.

In his papers in opposition to summary judgment, defendant Wang does not dispute plaintiff's assertion that he sold counterfeit condoms. It would be hard to; state law enforcement officers accompanied by plaintiff's counsel and private investigators found approximately 1.4 million counterfeit Trojan-brand condoms in the possession of defendant Wang and Dollar 99 Cent Mart, Inc., defendant Wang's corporation. He admitted that he had been selling the counterfeits to wholesalers and also sold some of them at his Dollar 99 Cent store. Though he did not admit to knowingly trafficking in defendants' opposition to summary judgment, his plea allocution completes the necessary elements for willful infringement. Wang's assertion that plaintiff insufficiently relies on innuendo and circumstantial evidence to prove his willful intent is no longer valid in light of his plea. See Phillip Morris USA Inc. v. Marlboro Express, No. CV–03–1161, 2005 WL 2076921 at *6 (E.D.N.Y. Aug. 26, 2005) (defendant's conduct was willful where he had recently pled guilty to knowingly and intentionally conspiring to traffic in counterfeit cigarettes and operated a large counterfeiting operation).

State authorities seized Trojan Magnum, Trojan–ENZ, Trojan Ultra Ribbed and Trojan Mint Tingle condoms. Defendant Wang and Dollar 99 Cent Mart, Inc. therefore infringed six Trojan trademarks entitling plaintiff to $6 million in statutory damages. Plaintiff is also entitled to attorneys' fees and the entry of a permanent injunction.

Defendant Jiang appeared for a change of plea hearing before Magistrate Judge Pohorelsky on September 28, 2009. Defendant Jiang also pled guilty to knowingly trafficking and attempting to traffic in counterfeit goods. In his allocution Jiang indicated that around March 2005, he assisted in transporting counterfeit Trojan condoms from outside the country to the United States and that he understood that the goods were counterfeit and that they would cause people who bought the condoms to believe that the condoms were actually Trojan condoms.

---

**8.** In light of these admissions, which squarely contradict the denials in defendants' deposition testimony and affidavits, counsel for the Dollar 99 defendants have indicated that they intend to file a motion to withdraw from their representation. However, they have not yet done so.

Defendant Zhang testified at his deposition that all of the counterfeit condoms that he sold—condoms totaling over one million—were purchased from defendant Jiang. His testimony is corroborated by telephone records showing calls from Jiang at the time of the purchase and by rental agreements indicating that Jiang rented spaces at a warehouse in Hicksville, New York, the same storage facility where Zhang picked up the counterfeit condoms and where over 1 million counterfeit Trojan-brand condoms were seized. Defendant Zhang is listed as the contact person on the rental agreement. Though defendant Jiang disputes Zhang's testimony as contradictory and avers that the proffered documentary evidence is merely circumstantial, defendant Jiang, like Wang, has now directly admitted that he knowingly trafficked in counterfeit Trojan-brand condoms.

Defendant also argues that any "involvement" in counterfeiting does not constitute the conduct prohibited by the Lanham Act, namely selling or otherwise directly using counterfeits in commerce. The argument lacks merit as his knowing participation in the large-scale trafficking of counterfeit goods is sufficient. *See Grant Airmass Corp. v. Gaymar Indus., Inc.,* 645 F.Supp. 1507, 1511 (S.D.N.Y.1986) (recognizing contributory liability for trademark infringement since the Lanham Act extends beyond those who actually directly place counterfeit goods in commerce to any person who knowingly causes a false representation to be used in connection with goods and services in commerce). Plaintiff's motion for summary judgment is granted and plaintiff is awarded $6 million in statutory damages, attorneys' fees and the entry of a permanent injunction.

Defendant Qui Wei Yu, the girlfriend of defendant Wang and cashier at Dollar 99 Cent Mart, does not dispute that she sold counterfeit condoms. She made actual sales of counterfeit condoms to an undercover investigator. Yu testified, however, that she knew nothing about the condoms stored in the basement or anywhere else, other than that condoms were sold in the store. Plaintiff has offered nothing, other than the circumstantial guilt of defendant Wang and his store, to contradict this testimony.

■ Summary judgment with respect to defendant Yu is denied. Although trademark infringement is a strict liability offense, personal liability for corporate employees is only found where defendant is a "moving, active, conscious force" behind the alleged illicit transaction. *See Bambu Sales, Inc.,* 683 F.Supp. at 913 (summary judgment denied with respect to sales manager because there was no evidence that he had involvement at all in the wrongful infringing act). On this scant record, I cannot find that defendant Yu was an active force in this transaction as a matter of law.

### c. ZX Defendants

Plaintiff alleges that Defendants ZX Trading Corp., ZX Industries, Inc., ZX Marketing, Inc., Jian Lin Hu, Lin F. Hu, Xiao Mei Huang and Jian Zhong Hu (together, the "ZX defendants") operated at the "pinnacle of the condom-counterfeiting pyramid." Defendants Jian Lin Hu and Lin Hu are the principals of ZX Trading Corp.

Defendants ZX Trading Corp., ZX Industries, Inc., ZX Marketing, Inc., and Jian Zhong Hu did not appear at their Court ordered depositions. Defendants' attorney concedes and I find that plaintiff is entitled to default judgment as against these defendants. Church & Dwight has

withdrawn its motion for summary judgment against defendant Xiao Me Huang.[9]

Plaintiff has proffered compelling evidence that the remaining ZX defendants, Jian Lin Hu and Lin Hu, trafficked in counterfeit Trojan-brand condoms. Defendant Jason Zhang and Syed Raza, who pled guilty in this district to trafficking in counterfeit condoms, both identified checks they had written to the ZX defendants to pay for the purchase of condoms. In the notes section of one check, for $19,000, written by defendant Zhang to ZX Trading Corp., Zhang wrote "Transportation fee, China." Plaintiff points out that authentic Trojan-brand condoms are only manufactured in the United States. Furthermore, defendant Lin Hu's phone records indicate that she made calls to defendant Zhang at the precise time of a counterfeit condom transaction between Syed Raza, defendant Zhang, and defendant Jian Rong Jiang. Lin Hu's phone records also reveal incoming and outgoing calls from defendant Jinkai Chen in the days immediately preceding the arrest of defendants Zeng Chen, Jinkai Chen and Ping Zao for possession of nearly 600,000 counterfeit condoms. In his declaration to the Court, Zeng Chen states that he purchased the 600,000 condoms from the ZX defendants.

In the face of this incriminating evidence, the ZX defendants—those that attended their depositions—asserted their Fifth Amendment right against self-incrimination. The deposition transcripts of Lin Hu, Jian Lin Hu are filled with refusals to testify. Now, in opposition to summary judgment, the ZX defendants submit declarations denying trafficking in condoms and insisting that their invocation of the privilege at deposition was to avoid incriminating themselves with respect to other counterfeit goods found in their warehouse. In March 2009, Jin Lin Hu and Lin F. Hu were indicted on and pled guilty to charges of trademark counterfeiting in this Court and the goods to which they admitted to trafficking in their plea allocution did not include condoms. The ZX defendants emphasize that, unlike the other defendants in this case, the seizure order executed at their premises turned up counterfeit goods, but no counterfeit condoms. They point out that they have consistently denied trafficking in Trojan-brand condoms while invoking the Fifth Amendment with respect to other counterfeit goods.

However, in response to pointed questions at their depositions such as "Does ZX trading import or sell counterfeit Trojan condoms?" the Hu defendants exercised their right to remain silent. The sudden willingness of the ZX defendants to talk about counterfeit condoms and other goods, at the eleventh hour, when they pled guilty to counterfeiting in March of last year—well before plaintiff submitted its summary judgment motion—has prejudiced plaintiff. The ZX defendants have chosen to selectively proffer testimony favorable to themselves, in the form of affidavits in opposition to summary judgment, without submitting to discovery on the same issues. *See S.E.C. v. Hirshberg,* 173

---

9. Xiao Me Huang's cross-motion for summary judgment is denied. Defendant Huang exercised her Fifth Amendment right to remain silent throughout her deposition in response to repeated questions about her involvement in counterfeiting. Though a civil litigant is entitled to avoid answering questions that might prevent the opposing party from obtaining relevant evidence during discovery,

the use of the privilege as a "shield" against discovery precludes the use of undiscoverable information as a "sword" in response to summary judgment. *E.g., United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir.1995) ("a party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence.") (*quoting United States v. Taylor,* 975 F.2d 402, 404 (7th Cir.1992)).

F.3d 846, 1999 WL 163992, at *2–3 (2d Cir. Mar. 18, 1999) (refusing to allow defendant to withdraw Fifth Amendment privilege where the party never "request[ed] discovery or agree[d] to waive the privilege to allow themselves to be deposed" after the resolution of a related criminal case); *see also In re Edmond,* 934 F.2d 1304, 1308 (4th Cir.1991) ("By selectively asserting his Fifth Amendment privilege, [the defendant] attempted to insure that his unquestioned, unverified affidavit would be the only version [of his testimony]. But the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.").

I am denying plaintiff's motion for summary judgment with respect to the Hu defendants because their denials of trafficking in counterfeit Trojan condoms, their plea allocution to other counterfeit goods, and the lack of counterfeit condoms found at their premises create a triable issue of fact in the face of plaintiff's circumstantial—and potentially explainable—documentary evidence. Nevertheless, to reduce the unfair prejudice to plaintiff, the Hu defendants are ordered to make themselves available for another deposition within two weeks of the date of this memorandum decision and order. The Hu's have now pled guilty to trafficking in other counterfeit goods and should be free to testify openly about the subject matter of this action.[10] Plaintiff's costs and attorneys' fees up to the amount of $3000 shall be paid by defendants. Defendants' failure to appear will result in default and summary judgment will be awarded to the plaintiff. *See United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 84–85 (2d Cir.1995)

("If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions" particularly "if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative 'cat-and-mouse approach' to the litigation"); *see also Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1089 (5th Cir.1979) (stressing that courts must be "free to fashion whatever remedy is required to prevent unfairness").

### d. *Mohammed Naeem*

Plaintiff suffered similar prejudice but is entitled to different relief with respect to defendant Mohammed Naeem. At his deposition, defendant Ala Burghol testified that defendant Naeem lent him approximately $40,000, at no interest, to complete the purchase of 6,400 cases of counterfeit condoms. Burghol testified that it took defendant Naeem, "[b]etween half an hour to an hour or less" to obtain the cash and when asked whether Naeem understood the money was for counterfeit condoms, Burghol indicated that "I told him—I believe I told him condoms."

Defendant Naeem, then a third-party witness, was deposed and exercised his Fifth Amendment right to remain silent in response to every question about his business or his involvement with condoms. After his deposition, plaintiff added Naeem as a defendant to the complaint. Naeem failed to answer or otherwise respond to the complaint and the Clerk of this Court entered his default on June, 5, 2009.

Defendant Naeem now seeks to vacate the default. To do so, Naeem recognizes he must establish "good cause." Good

---

10. The Court's ruling does not preclude plaintiff from asking the jury to draw an adverse inference from the Hu defendants' assertion of the Fifth Amendment at the first deposition or from their admission to dealing in other counterfeit goods in March 2009.

cause depends on "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005).

Even assuming Naeem's testimony that he had difficulty obtaining a lawyer once he became a party to this action demonstrates that he did not willfully default, Naeem has not demonstrated the existence of a meritorious defense. In his affidavit submitted in support of his motion to vacate default, Naeem admits to providing the monies used by Burghol to purchase counterfeit condoms but contends that he did not realize or understand that his money was being used to fund illicit counterfeiting activity. That is of no moment. As indicated *infra*, trademark infringement is a strict liability offense and even an "innocent" individual who sells goods bearing an infringing mark is liable for trademark infringement. *Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F.Supp.2d 108, 112 (E.D.N.Y.2000) ("[T]he registrant need not prove intent in order to succeed on the issue of liability" under the Lanham Act). It also is of no moment that Naeem did not actually purchase or sell the infringing products himself. Courts have recognized that a contributor who knew or had reason to know of the Lanham Act violations or was "willfully blind" to the violations is liable for trademark infringement. *Cartier Int'l B.V. v. Ben–Menachem*, No. 06 Civ. 3917, 2008 WL 64005 (S.D.N.Y. Jan. 3, 2008) (without any direct involvement, parents of two sons who operated a counterfeiting business from their home were "at the very least liable for contributory trademark infringement" for their willful blindness).

In his affidavit, defendant Naeem indicates that when asked for $40,000 in cash for goods, he "did not inquire what kind of goods were involved" in the deal and "did not request a receipt for the loan." At the very least, defendant Naeem was willfully blind to the Burghol transaction for 6,400 cases of counterfeit condoms. He therefore lacks a meritorious defense and I find no reason to vacate his default. The Burghol defendants violated five trademarks and defendant Naeem, at the very least, contributed to their infringement. Plaintiff is entitled to $50,000 in statutory damages and the entry of a permanent injunction.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion for default judgment is GRANTED. The matter will be referred to a Magistrate Judge for an inquest on attorneys' fees and the case shall proceed simultaneously to trial with respect to the Kaloti defendants, ZX defendants and defendant Qui We Yu. By separate order, the Court will schedule a date for the submission of a joint pretrial order and will set a date for the pretrial conference.

**SO ORDERED.**